(C. D. 791)

GEO. WM. RUEFF, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 3, 1943)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General *(Daniel G. McGrath, Alfred A. Taylor, Jr.,* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: In March 1934, the plaintiff herein made a warehouse entry at the port of New Orleans covering 27 barrels of rum from Cuba which they entered at the then prevailing rate of $5 per gallon under paragraph 802 of the Tariff Act of 1930, less 20 per centum under the preferential rate granted to Cuban products under the Cuban Reciprocity Agreement approved December 17, 1903, 33 Stat. L. part 1, page 3. The entry was liquidated at the same rate on April 17, 1934. Later, to wit, on September 3, 1934, there came into effect a new trade agreement with Cuba, 49 Stat. L. part 2, page 3559, negotiated under authority of section 350 of the Tariff Act of 1930. Under that agreement paragraph 802 of the Tariff Act of 1930 was modified to provide as follows:

| Tariff Act of 1930, paragraph | Description of articles | Column 1 Minimum preferential reduction to Cuba | Column 2 Maximum rates of duty. Specific rates in United States dollars |
|---|---|---|---|
| 802 | Rum in bottles containing each one gallon or less | 20% | 2.50 per proof gallon. |

The rum here involved was imported in barrels but it appears that a portion—the exact quantity is not stated—was transferred to a manipulating warehouse under section 562 of the Tariff Act of 1930, and the rum was there put into 1-gallon glass jugs. Two withdrawals amounting in all to 242 gallons were made of this rum in jugs, and the duty exacted thereon was $2.50 per gallon, which, it will be observed, is the rate named in the trade agreement with Cuba for rum in bottles containing 1 gallon or less. These withdrawals were made September 6, 1934, and December 28, 1934, respectively.

No protest was made against what might be called the original liquidation of April 17, 1934, and no protest was filed against the rate of $2.50 per gallon at which rate the 242 gallons in glass containers were assessed upon withdrawal for consumption.

On February 7, 1935, the collector of customs at the port of New Orleans received a telegram from the Bureau of Customs advising him that the Bureau held that rum in jugs did not fall within the provision of the Cuban Trade Agreement relating to rum in bottles. The effect of this ruling was to hold the 242 gallons, which had been withdrawn from the manipulating warehouse, dutiable at $4 per gallon which represented the $5 rate named in paragraph 802 of the Tariff Act of 1930, less the 20 per centum reduction under the trade agreement with Cuba.

In accordance with this ruling the collector under date of August 27, 1935, advised the importer that there was owing on the two withdrawals of rum the sum of $396.90 in addition to the sum said importer had already paid. This letter is not in the record and we do not know its exact terms, nor how the amount of $396.90 was arrived at. No protest was filed against this action of the collector and the importer seems to have done nothing about it, for we find that on October 24, 1935, the collector sent another letter to said importer correcting the amount of increased duty demanded to $363 and requiring payment at once. The importer paid this last-named sum on November 18, 1935, and the same day filed the protest now before us. The protest is inartificially drawn, containing no suggestion as to the affirmative relief desired and making no mention of the claim later set up that the jugs into which the rum was placed in manipulating warehouse were bottles for tariff purposes. However, as all the parties concerned seem to have fathomed the intent of the importer and his attorney, we shall consider the protest sufficient.

The first hearing was called at New Orleans on October 26, 1937, at which time the case was continued. Thereafter it was continued from time to time until May 7, 1940, when some testimony was taken and the case was submitted for decision. The only incident of any importance at the hearing was the motion of importer's attorney to have the appraiser's report admitted in evidence and the Government attorney's

strenuous opposition to said motion. The judge presiding at the trial finally admitted the report in evidence leaving to the division of the court which would ultimately pass upon the case the final decision as to its admissibility. We are of the opinion that said report should not be admitted in evidence but are also of the opinion that it has little or no bearing on the merits of the controversy for the reasons set forth below. The report is as follows:

* * *. Contention of importer is conceded by this office, as the Bureau has ruled that one-gallon glass containers are to be considered the same as bottles, under the Cuban Treaty.

It is no part of the appraiser's function to "concede" the "contention of the importer." That is a matter first for the collector and subsequently for the court to decide. Furthermore, the statement that "the Bureau has ruled that one-gallon glass containers are to be considered the same as bottles, under the Cuban Treaty" is plainly in conflict with the record herein, and particularly with the report of the collector wherein he states that in a telegram dated February 8, 1935, the Customs Bureau held that rum in glass jugs holding each 1 gallon or less was dutiable at $4 per proof gallon. (The appraiser's report is dated December 11, 1935.) It was the ruling of the Customs Bureau that gave cause for the very protest under which the appraiser made his report.

Although, as stated above, the case was submitted for decision at the hearing of May 7, 1940, it was restored to the docket by order of the court and was again called on November 7, 1940, when it was continued, and again on April 16, 1941, at which time it was again continued. On November 10, 1941, it was called again and the attorney for the Government moved to dismiss the protest "on the ground that it is untimely," but did not explain why he deemed it untimely. Briefs were filed on both sides and the court denied the motion to dismiss and ordered the case restored to the docket once more.

On April 14, 1942, the final hearing was held, and testimony was offered by the plaintiff on the merits of its contention that glass jugs are bottles. No testimony was offered on the part of the Government, the importer's witnesses were not cross-examined, and the case was submitted for decision.

The first question before us is the motion on the part of the Government to dismiss the protest as untimely. As above stated, the entry was liquidated as a whole on April 17, 1934, when the duty on rum from Cuba, whether in barrels or in bottles, was $5 per proof gallon less 20 per centum. The importer could not, at that time, file a protest based on a trade agreement that did not come into effect until September 3, 1934. If, and insofar as, the Government contends

that the protest is untimely because it was not filed within 60 days of April 17, 1934, we would have no hesitation in dismissing it. However, we gather from the Government brief on the motion to dismiss, that the real position of the Government is set forth in the following passage:

Concededly, no demand was made by the importer for a reliquidation, but the Collector's decision was nevertheless made known to the plaintiff in the letter of August 27, 1935, in which it was stated that there was a deficit of $396.90 due and owing. The importer's time to protest against such decision on the assumption of the applicability of the Cuban Trade Agreement began to run from that date, and was not extended by the subsequent letter of October 24, 1935, wherein the deficit was recalculated, for the decision lay in the determination that the Cuban Trade Agreement was not applicable to the entry here involved, rather than in the simple arithmetical problem of the difference between the duties assessed and those paid.

After extended reflection and consideration of the many decisions that have been made on the subject of goods deposited in bond when the duty was fixed at one rate, and withdrawn therefrom after the duty had been changed by operation of law, we conclude that the suggestion as to the proper time for protest, contained in the above excerpt is correct. The adjustment of duties that took place on August 27, 1935, whereby, as the importer was informed by letter, the duty on the rum he had been permitted to withdraw from manipulating warehouse at the rate of $2.50 per gallon was "adjusted" to $4 per gallon, was in effect a reliquidation. *Baltimore & Ohio Railroad Co.* v. *United States*, 61 Treas. Dec. 162, T. D. 45417. Therefore the importer had 60 days from the date of such reliquidation in which to file protest. The protest was filed November 19, 1935, which is plainly more than 60 days thereafter, hence, under the law it is too late and must be dismissed. The letter of November 1, 1935, was not a new "adjustment" of duties, or a reliquidation, but was merely an advice from the collector to the importer of an error in computing the exact amount of duty due. The real cause of action arose on August 27, 1935, when the collector demanded duty at the rate of $4 per gallon upon the rum, and that is the time that protest should have been filed. Why the importer did not protest is not made to appear.

For the foregoing reasons the protest is dismissed.

Judgment will be rendered accordingly.